who made an application for enrollment in the University of North Dakota Law School. Initially, on July 14, 2015, he then supplemented that with several letters of recommendation that he had from individuals. And one of those letters referred to medical problems that he had in the past. And one of the issues in the case was, at least for the school, was that he had been twice or three times enrolled in law schools, one in University of Connecticut, one in Quinnipiac, and that had dropped out before he received his grades. He supplemented his, on July 23, some eight days after his initial application, he supplemented his application, indicating that he suffered from a bipolar disorder during that period of time. And that affected his ability to withstand the rigors that oftentimes occurs in law school. The people at the admissions committee had rejected his request and had also notified him on July 30. What's alleged and what's proven, or at least offered as proof, that the reason for his denial of entrance was based on his medical condition or believed to be based on his? Well, the district court made a finding that he had made a prima facie case. And the issue that, in terms of what he suggests, that may be the material. It didn't see a need to really resolve that. I'm sorry, I'm sorry. I don't think, I think that's an overstatement. The district court said that it moved past the prima facie case. Well, I believe the court did find a prima facie case and then looked at the three elements that were appropriate in order to do so. One, that he's disabled. All right, well, I- One, that he had similar or more qualifications than those that had been accepted. And that he also, there was a discriminatory intent or discriminatory matter in which he had been rejected. Those were the three findings that were required. Answer the chief's question. I'm sorry, I messed this up. I'm sorry. What's the evidence alleged or proven as to the animus existed and that the termination was based on a prohibited? Well, I think that there was, what you have to do is you have to look at what the inferences were that were available to him. Okay, so that moves us to the school offering its non-discriminatory reason for terminating or not permitting him to enter the school, which had to do with scores and prior applications to law school, perhaps. I don't know of all of those things, but they're the things that are in the record as to their rationale. They provide a non-discriminatory basis. What rebutts that? Well, I think there are a couple of things. First of all, the subjective approach that occurred during the selection process. And it's pretty clear that it is subjective. Well, subjectivity by itself isn't sufficient to make it invalid. What in addition to including a number of subjective criteria points out that in that process, it was manipulated to focus on a covered disability. Well, I mean, I think that the circumstances are clear that in this particular case, when the magistrate and then the district court evaluated the other individuals who had made application, that there was a, this individual, Mr. Power, was in fact qualified in order to- Well, the court found that he was as qualified as some, more qualified than others, but less qualified than some who were also not admitted. Yeah, and the court used as its pool the applications that were matriculated. But our position is that it should have used all the applications in making the determination whether or not he was significantly qualified in order to secure enrollment at this particular institution. The other facts is there was a phone call that is referred to in an affidavit that was prepared by Mr. Power. Have you got a case that supports that? I'm sorry. Is that assertion that it was error not to look at all the applicants? Have you got a case supporting that? Well, I think that you have to, the cases say that you have to look at the totality of the evidence and that you have to look at all the evidence and the whole record in order to make a determination concerning what- Why do you have to look at other people that weren't admitted? Well, you have to look at the whole record, Your Honor. That's what the case law says in order to sustain a motion for summary judgment. We can't write an opinion saying that the district court is reversed because it didn't look at the whole record. Well, you can certainly indicate that the district court should have looked at the whole record and making a determination as to whether or not this individual had been discriminated against because of his disability. Let me ask you something that bothers me about this case. Have you got a case where admissions to a college and particularly a graduate school, the denial of admissions, an academic decision, was held to be pretextual under the ADA or Title VII or any employment, any discrimination statute? I do not know of one, Your Honor. Pardon? This is one. This one here. I do not know of any- Have you got a precedent? I do not know of one. There is a lot of Supreme Court precedent about the judicial deference to academic decision-making in many different contexts that are, if anything, including some employment cases. So it seems to me that's very difficult for us to say that because this decision, academic decision was subjectively made. It might have been made differently had one taken a different view of the applicant pool or the relevant competitors, that somehow we are going to infer a pretext for ADA discrimination. That, to me, is a big, big leap on the existing case law. So you don't have anything to help you with that leap. I don't, well, my position is not that big a stretch. Well, I know. I appreciate that. But I think what I'm trying to indicate- You understand that the subjective approach, if you put that label on academic decision-making as a pejorative, so to speak, that's a huge step for the judiciary to take. Well, you know, what they said was that he was not a good fit. That was the argument. I don't know what that means. I can't really- Every college admissions officer in the country would say, why did you do this? Well, judge, he wasn't a good fit. Well, what does that mean? He's not a good fit with a student body? He's not a good fit for the academic credentials? He's not a good fit because- The Supreme Court says that's their business, not ours. That's the problem you face. Our position is they decided he was not a good fit because he had this history of mental disorder and bipolar disorder. That's the crux of the case, is what is the evidence that that was the reason? Well, I think that what we're trying to do here is really avoid the loss of ability to present his case in court by the fact that the district court granted a motion for summary judgment. Well, what's the alleged basis or what's alleged that indicates it was based on- Well, for example, the admissions committees, Professor Sickler and Dean Mead said basically, I'm sorry, Dean Myers said that they didn't even consider the mental health circumstances when they made the decision in their depositions. Wasn't there at least one that had voted before they even got information about the- Professor Sickler did vote before there was any information. But the information, that information was not conveyed to Mr. Power until July 30th in a form letter that they sent to him, basically saying that his application had been denied. Are you saying it's discriminatory because they didn't consider it? I'm saying no, because what the- I thought you just said in support of the allegation, well, they even said in their depositions they didn't consider it. Well, I didn't finish my argument, Your Honor. The round circle of the argument is that Dean Mead said that they did consider it. So that's an issue of fact, we think, that should be addressed by a fact finder like a jury as opposed to on a motion for summary judgment. And what we have to demonstrate is that there are genuine issues of fact. In dealing with the subjectivity, one of the problems is that there's no way for Mr. Powers to determine what was the subjective analysis that occurred because that information was withheld from him, perhaps rightfully so, but there were objections during the course of his deposition anytime he sought to seek information concerning other aspects of the individuals who had been approved and not, they didn't matriculate, but they were admitted, he didn't have that situation where he could argue that. And the only information that he received in the July 30th letter was basically a form letter that says, you know, you've just been denied. When he talked to Dean Mead and which she followed up with an email response, she specifically indicated they considered his mental disorder and she was confident that they had considered his mental issues. And, you know, when you're dealing with mental issues, you're not talking with something that disappears. You know, it's not, this individual tackled those problems. It's, he basically candidly admitted that he had psychotherapy, he had medication, and all those things helped him to withstand and, you know, maybe beat this for a period of time. But it is required and the ADA recognizes that bipolar disorder and the CFR has recognized that bipolar disorder is in fact coverable under the ADA. And I will reserve the balance of my time. Thank you, Mr. Sindel. Thank you. Mr. Nicolai. Good morning, your honors. Jim Nicolai representing the UND Law School and the other named defendants. There are four independent grounds for affirming the district court's decision. First, power failed to contest the state's sovereign immunity defense in both this court and the district court, thereby conceding the defense as merit. Second, even if the court disregards the waiver and considers the merits of the sovereign immunity defense, Congress does not have authority to abrogate sovereign immunity absent the violation of a fundamental right and the 14th Amendment. Let's talk about what's been argued. I mean, the district court said, yeah, I don't have to go there, so I'm not gonna go there. Right, but my point is that Mr. Power did not have that same privilege of disregarding that. Counsel, let me ask a question about that. If UND Law does have sovereign immunity, does this court even have jurisdiction to reach the merits of the ADA claim? Well, with respect to Judge Smith and the decision in Lords v. Dean, I think there is some tension between skipping over that step as what was permitted in Lords v. Dean and the Supreme Court's decision in the Steel Company versus United Citizens case. And as the district court noted in a footnote, there is a decision that predates Lords v. Dean that says that pursuant to Steel Company, we can't skip over that step. I don't know that the court needs to address that tension in this case because I think the court can simply hold that Mr. Power, by not responding to our sovereign immunity defense in both the district court and this court, has waived it. He's conceded it has merit by not contesting it. And I certainly could not have anticipated that the argument that he did make finally in his reply brief in this court, and that was that the court had to convert his claim, his statutory claim under the ADA, into a constitutional right of access to the court's claim by his own failure to address the defense. And that's the only argument that Mr. Power has made with respect to our sovereign immunity defense, and that certainly cannot be the law. We started this case with a statutory ADA claim dealing with the right of education, and by not contesting sovereign immunity defense, Mr. Power can convert his claim into a constitutional right of access to the court's claim by not contesting the defense. And that's the argument that was articulated for the first time in the reply brief. The third reason, the third independent ground for affirming the district court's decision is that the facts are undisputed, and we believe the district court erred with respect to this. The facts are undisputed that the admissions committee made the initial decision to deny Power admission before he disclosed an alleged disability, and thus the causation element of a prima facie case is missing. Was that true for all the decision makers? Yes, the only decision, that's another point, Your Honor. The business of the phone call with Dean Rand is really a red herring, because the record is clear that Sickler and Myers were the only members of the admissions committee. And if you look at appendix page 86, refers to Myers' deposition, page 18, lines 13 through 21. There's no other evidence. Dean Rand was not a decision maker. The only testimony in the record is that Myers and Sickler were the decision makers. The only time Dean Rand became involved is when those two had a conflict, and they called on Dean Rand as the tiebreaker, and Professor Myers testified that that hadn't happened in over two years, and didn't happen in this case. That's the other thing where the district court erred is by holding that there was a confusion or some discrepancy between Myers' testimony and Sickler's testimony about when or whether one or two decisions was made. That's just wrong. But isn't there ambiguity as to whether the decision was reconsidered after the medical condition information was submitted? No, that is clear, Your Honor. That's exactly what happened. And initially this- Why isn't the reconsideration actionable or subject to prima facie case analysis? Because what would happen is you would take, and the only evidence they offer is the knowledge of the disability, and that can't be enough. I think that's the point that Judge Smith was trying to get at earlier. But didn't the final rejection actually take place after the mental health addendum was submitted? No, Your Honor. The formal letter went out, but the initial decision, the record is unequivocal that the initial decision was made before July 23rd when he gratuitously disclosed that he had a disability. It doesn't just go to the fact that there was a reconsideration after that. Right, but that gets to the point I would like to make, is that if simply disclosure of an alleged disability after an initial decision has already been made without knowledge, as you pointed out in your decision in Voss, cannot be, you know, you can't have a prima facie case if the decision is made before knowledge of the disability. If you have an initial decision and the only evidence that's offered after that initial decision is made is disclosure of the disability, then you have the perverse situation where plaintiffs could establish a prima facie case solely by disclosing disability. And then you have a non-discriminatory, what clearly has to be a non-discriminatory decision made prior to knowledge, turned into a potential discriminatory one based solely on the disclosure of an alleged disability. That can't be the law. That can't be the law, your honors. And then the third reason is, if we get to what the district court, or the fourth reason, excuse me, how the district court decided it, said that he's established a prima facie case, UND provided legitimate non-discriminatory reasons for its decision, a point that's not contested by Mr. Power, and where the case turned is whether Power failed to marshal sufficient evidence to show those stated reasons were protectual. And what I'd like to do is point out that in the addendum, the law is clear, and I think Mr. Power also concedes this, that it's not enough to show that he just fell within the range of applicants that were either admitted or denied. And even if we separate out all the other factors that UND considered, like the dated application letters, the three prior withdrawals from law school, his low GPA, the fact that he was 21 years removed from his undergraduate course of study, the nature of the letters of application, the very short personal statement that gave UND no opportunity to really assess his writing and analytic abilities, if we separate all that out and we just focus on the objective factors, the combination of the LSAT score and undergraduate GPA, all that Mr. Power can show is that he fell within the range of candidates that were both admitted and denied. Is it necessary to prove that you are substantially better than those that are? Yes, I think that's what both McCullough and Torgerson stand for that principle, Your Honor. And so I think for him to show that he was substantially better qualified, he would have needed to marshal evidence that shows his letters of recommendation were substantially better than the other students. The nature of those letters of recommendation were substantially better. They weren't as dated as his were. The other students didn't have three withdrawals from law school. I think he would have had to show all those factors, not just single out the objective ones, but even singling out the objective ones. If you look at the addendum with respect to the fall applicants of 2015, page 827 of the addendum identifies on line 28 and 37 of page 827 and then lines three, four, and five of page 828, there are five candidates that had significantly higher indexes as reflected by a higher LSAT score and a cumulative GPA that were all denied admission. If you go a little bit farther, there's on line 17 and 39 of 828, there are two students that were also denied admission with both with higher GPAs, slightly lower LSAT scores, and a cumulative index just one point below Mr. Power's cumulative index that were also denied. So that's eight different people that basically fall within the range of candidates under Torgerson that were also denied admission. And that does not show that he was substantially better qualified. Similarly, the fall 2016 applicant pool, which is found at page A333 and A34 of the addendum show two students who were denied with much higher, well, one with a much higher, line 36 on page A33 and line six on page A34 that had a better objective scores than Mr. Power, even separating out all those other factors. So there are, as I said, four independent grounds. And Judge Gross, if you have concerns about skipping over the step, I think you can avoid that in this case just by saying the defense was never contested, our sovereign immunity defense was never contested, and it becomes a simple decision to say that that's where the case ends. Unless there are any other questions, I'll stand on my brief. Thank you. Thank you, Mr. Nicolai. Mr. Sandel, your rebuttal. It's gonna be brief, because that's all I have. But to talk to, respond to Judge Kras's question about whether it reached the merits of the case, it isn't necessary for us to prove today that he would win. It is only necessary that there's a genuine issue of fact that should be resolved. And as Judge Logan pointed out, there is a situation where there's some ambiguity as to whether there was reconsideration of the application at the time that they discovered he had this mental disease or disorder. And that ambiguity and that possible reconsideration is another genuine issue of fact that is presented in this case, and is a reason why a jury or a fact finder should make a determination as to whether there's discrimination. And that should not be left up to the district court in a summary judgment proceeding, where it's clear from all of the case law, as well as the rule, that the burden is not an onerous one. And all there has to be is a genuine issue of material fact, which we believe that that has been established. What do you disagree with about the appellee's arguments on, excuse me, immunity for the state? Well, we would suggest, first of all, that this is a situation in which, because of the disability, he is being in a similar vein as Tennessee versus Lane, and U.S. versus Georgia, that those cases talk about access to the court. He is asking for the opportunity to have and present his case to the court or to the jury. And so we're arguing that. Did you make a constitutional argument in that? There was a constitutional argument as to whether or not there was a deprivation of due process in the fact that he is not going to be, could not be allowed in court if there is no abrogation of the rule. However, there's also the case of Edelman versus Georgian, which indicates that this court can remand it back to the district court for a determination on injunctive relief alone, and disregard the request for monetary compensation. And if that's the situation, since there's no dipping in the taxpayer coffers, the courts have held, and Edelman holds, that, in fact, that is a situation in which the 11th Amendment would not be a commandment that would require the dismissal of this particular lawsuit. And the question of falling within the range, to me, that is a jury question. That is a question as to whether or not he is qualified under the standard to make an argument of pretext. That is an issue for a jury to determine after review. Now, we think that we have presented a significant case as to why the district court, the magistrate court's judgment was flawed in that regard, but isn't, in fact, the idea that there are these subjective standards when Mr. Power is handcuffed from actually determining, and looking, and evaluating, and examining those standards, and how they compare to what he did, because they do not disclose that information. And, in fact, during the course of depositions, they objected to any question that even approached those subjective determinations. So he's in a situation where, at least at this stage of the proceeding, he cannot move forward to make an assessment as to whether or not their subjective determination was based on his bipolar disorder or some other inappropriate factor. And we believe that the merits of the claim are not necessarily important to address, but simply the fact that this summary judgment order was improper. Thank you. Thank you, Mr. Sindel. Court wishes to thank both counsel for the arguments you've provided to the court today, and the briefing which you submitted. We will take the case under advisement. Madam Clerk, would you call case number three for the morning? Craig Smith versus James McKinney et al.